IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IVAN BURLEY #315059, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 3:21-cv-00326 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| JASON ARNOLD, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Ivan Burley, a pretrial detainee at the Davidson County Sheriff's Office in Nashville, Tennessee, filed a pro se civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application to proceed as a pauper (Doc. No. 4). Plaintiff brings this action against Sumner County, the City of Portland, the 18th Judicial District Drug Task Force, and Jason Arnold, a Portland Police Department detective and Drug Task Force member. (Doc. No. 1 at 2–3, at 5–6.) This action is before the Court for an initial review under the Prison Litigation Reform Act. And as explained below, this action will be stayed pending the resolution of ongoing state criminal proceedings arising from Plaintiff's April 2021 arrest.

**I.      Application to Proceed as a Pauper**

The Court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Plaintiff's application is accompanied by a certified copy of his inmate trust account statement (Doc. No. 4 at 3–4), and it appears that Plaintiff cannot pay the full filing fee in advance. Accordingly, Plaintiff's application will be granted, and the $350.00 filing fee will be assessed as directed in the accompanying order. 28 U.S.C. § 1915(b)(1).

**II.     Initial Review**

The Court must dismiss the Complaint if it is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The Court also must liberally construe pro se pleadings and hold them to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

A.     Allegations and Claims

Plaintiff alleges that the City of Portland, Tennessee, is within Sumner County and that both the City and the County contract with the 18th Judicial District Drug Task Force ("Drug Task Force"). (Doc. No. 1 at 9.) In early 2019, Plaintiff filed a separate (and still pending) federal civil rights action in this Court against Sumner County, the Drug Task Force, and Jason Arnold. (*Id.* at 5–6); *see Burley v. Sumner Cnty. 18th Jud. Dist. Task Force*, No. 3:19-cv-00118.[1] In the instant lawsuit, Plaintiff alleges that Arnold was "the lead investigator in the 2015 [criminal] case at the root of the pending 2019 civil lawsuit." (Doc. No. 1 at 9.) On March 5, 2021, the Court granted Arnold's motion to dismiss, terminating Arnold as a party to that case. (*Id.* at 6); *Burley*, No. 3:19-cv-00118, Doc. No. 59 (Mar. 5, 2021). That case remains pending against Sumner County and the Drug Task Force. *See Burley*, No. 3:19-cv-00118.

Prior to April 1, 2021, Arnold allegedly procured an "indictment" for Plaintiff's arrest from a Davidson County court without probable cause. (Doc. No. 1 at 5–6.) Around 1:00 p.m. on April 1, law enforcement agencies including the Drug Task force, the Portland Police Department, and

---

[1] In the 2019 lawsuit, Plaintiff also named Sumner County Circuit Court Judge Dee David Gay as a defendant, and the Court granted Gay's motion for summary judgment. *Burley*, No. 3:19-cv-00118, Doc. No. 59 (Mar. 5, 2021).

the Mt. Juliet Police Department allegedly seized Plaintiff's 2017 Chevrolet Silverado. (*Id.* at 10.)[2] Around 4:00 p.m. that same day, according to Plaintiff, law enforcement including Arnold executed a search warrant at Plaintiff's home, detected marijuana, and seized Plaintiff's currency. (*Id.*) During the search, Arnold allegedly "made a statement regarding his dismissal from the 2019 lawsuit to Plaintiff's fiancé." (*Id.* at 8.) Plaintiff alleges that his property was seized "under the pretense of possession of marijuana" even though his vehicle was seized before the detection of marijuana in his home. (*Id.* at 10.)

Allegedly, Plaintiff was arrested and charged with the following offenses, stemming from a business he owned in 2018: identity theft; theft over $10,000 and under $60,000; computer fraud; and money laundering. (*Id.* at 5–6.) These offenses allegedly occurred in Davidson County, which is 40 miles from the City of Portland. (*Id.* at 6.)

Plaintiff alleges that on April 6, 2021, during a local news interview, Arnold "admitted that he had Plaintiff under his investigation for five years." (*Id.* at 10–11.) According to Plaintiff, Arnold also made the allegedly false statement that Plaintiff "was involved with shipping cocaine through the mail." (*Id.* at 11.) Allegedly, as a result of these comments, Arnold's pervasive five-year investigation, and Plaintiff's incarceration, Plaintiff's businesses (Priority Properties and Priority Restoration and Remodeling) suffered financially. (*Id.* at 11, 14.) Plaintiff also alleges that he has suffered serious mental strain from Arnold's constant investigation, causing Plaintiff to seek treatment from mental health professionals and to self-medicate using "marijuana and THC infused product[s]." (*Id.* at 13.)

Based on Arnold's comment to Plaintiff's fiancé, the distance between Davidson County and Portland, and the close temporal proximity between Arnold's dismissal from the 2019 lawsuit

---

[2] Although Plaintiff does not specifically so allege, it is inferable from his allegations that the seizure occurred prior to the issuance of any warrant that conceivably could have supported the seizure of this vehicle.

and Plaintiff's arrest, Plaintiff alleges that his arrest without probable cause and the seizure of his property were done in retaliation for the 2019 lawsuit. (*Id.* at 6, 8, 10.) Plaintiff also alleges that Defendants have "a financial stake" in the 2019 lawsuit, which demonstrates a "lack of rational basis for [their] action and their animus." (*Id.* at 8–9.) In addition, relying on a prior ruling by the Davidson County Chancery Court, Plaintiff alleges that the out-of-jurisdiction seizures of property in both Davidson and Wilson County were improper and violated his rights. (*Id.* at 11–12.)

Plaintiff asserts that Defendants violated his rights under the First, Fourth, and Fifth Amendments, as well as the Equal Protection Clause of the Fourteenth Amendment. (Doc. No. 1 at 5–8, 9–11.) Plaintiff claims that both the City of Portland and Sumner County, which "authorized the [Drug Task Force] to operate within its boundaries," have policies of inadequate training and supervision, as well as customs of tolerance for civil rights violations. (*Id.* at 5.) Finally, Plaintiff asserts, based on Defendant Arnold's alleged comments during the April 6 news interview, that Arnold committed the Tennessee torts of defamation, slander, false light invasion of privacy, libel, intentional or reckless infliction of emotional distress,[3] negligence, loss of consortium, and abuse of process.[4] (*Id.* at 11–13.)

Plaintiff requests monetary damages and injunctive relief in the form of Arnold's removal from his position and the Drug Task Force being disbanded. (*Id.* at 15.)

---

[3] Plaintiff also asserts a claim of intentional or reckless infliction of mental anguish (Doc. No. 1 at 12), but Tennessee courts have used that term interchangeably with the more common term, "intentional infliction of emotional distress." *See Sallee v. Barrett*, 171 S.W.3d 822, 824 n.1 (Tenn. 2005). Thus, the Court treats these two purportedly separate claims as a single claim.

[4] The Court construes Plaintiff's claims for "lost earnings" and "lost potential earnings" (Doc. No. 1 at 13) as requests for certain kinds of damages rather than stand-alone causes of action.

B.   Legal Standard

To determine whether the Complaint "fails to state a claim on which relief may be granted" under the applicable statutes, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

C.   Discussion

"There are two elements to a [Section] 1983 claim. First, a plaintiff must allege that a defendant acted under color of state law. Second, a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citation omitted).

As a threshold matter, Plaintiff's Section 1983 claims are premised, in part, on the allegation that Defendants acted in a manner that was inconsistent with a Davidson County Chancery Court order entered in 2018. But the Court has no basis to infer that a 2018 ruling by the Chancery Court governs seizures alleged to have occurred in April 2021. Accordingly, the Court will consider whether Plaintiff has stated colorable Section 1983 claims without regard to the alleged 2018 Chancery Court order.

### 1. Dismissal of Fifth and Fourteenth Amendment Claims

First, Plaintiff does not allege the facts necessary to assert a Fifth Amendment claim. The Complaint alleges, without explanation, that the seizure of his property violated his "Fifth Amendment right."[5] (Doc. No. 1 at 10.) Even under the lenient standard for reviewing pro se pleadings, Plaintiff cannot rely on a bare assertion of a legal conclusion. *Perry v. United Parcel Serv.*, 90 F. App'x 860, 861 (6th Cir. 2004) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)); *see also Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 392–93 (6th Cir. 2020) (citations omitted) (explaining it did not satisfy the Federal Rules for a plaintiff to fail to (1) "connect specific facts or events with the various causes of action she asserted" and (2) "separate each of her causes of action or claims for relief into separate counts"). Plaintiff, therefore, fails to state a Fifth Amendment claim.

Plaintiff also asserts a "class of one" equal protection claim under the Fourteenth Amendment. (Doc. No. 1 at 9–10.) In support, he alleges that Defendants targeted and harassed him by initiating legal proceedings when there was "no indication or probable cause to believe that there was ongoing criminal activity." (*Id.* at 10.) "To state a violation of equal protection based on a 'class-of-one' theory, a plaintiff must allege 'that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Arucan v. Cambridge E. Healthcare Ctr./Sava Seniorcare, LLC*, 763 F. App'x 415, 422 (6th Cir. 2019) (quoting *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012)). Here, Plaintiff makes a conclusory allegation that he was "treated differently than a similarly situated citizen" (Doc. No. 1 at 10), but he does not actually explain how his situation was similar to that of any

---

[5] Unlike in Plaintiff's 2019 lawsuit, for example, he does not allege that Defendants violated his Fifth Amendment due process rights by failing to hold seized property in safe keeping. *See Burley*, No. 3:19-cv-00118, Doc. No. 4 at 2–3; Doc. No. 40 at 14–15.

6

other person. Thus, there is insufficient factual matter to raise this claim above the speculative level. *See Iqbal*, 556 U.S. at 678–79 (explaining that a plausible claim must show more than the mere possibility of misconduct). Accordingly, Plaintiff fails to state a Fourteenth Amendment claim. *See Arucan*, 763 F. App'x at 422 ("Arucan does not state a plausible claim against the Officers because she has not alleged that they witnessed someone else commit a crime but declined to effectuate an arrest.").

        2.        Stay of Remaining Claims

Plaintiff also asserts that Defendants violated his First and Fourth Amendment rights. (Doc. No. 1 at 5–8, 11.) Under the First Amendment, arresting someone, searching his home, and seizing his property at least in part because he filed a federal lawsuit may give rise to a retaliation claim. *See Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999)) (holding that filing a federal lawsuit is constitutionally protected activity); *Cruise-Gulyas v. Minard*, 918 F.3d 494, 497 (6th Cir. 2019) (explaining that a search or seizure that is unjustified under the Fourth Amendment may constitute an adverse action for the purpose of a First Amendment retaliation claim). A plaintiff asserting a First Amendment retaliatory-arrest claim generally must "plead and prove the absence of probable cause for the arrest." *Hartman v. Thompson*, 931 F.3d 471, 484 (6th Cir. 2019) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019)). Here, Plaintiff alleges that Arnold obtained a warrant for his arrest without probable cause in retaliation for a prior legal action. Thus, Plaintiff states a potentially colorable First Amendment retaliation claim.

As for the Fourth Amendment, Plaintiff does not articulate specific theories of liability, but for the purpose of initial review, the Court assumes that Plaintiff is asserting claims for false arrest

7

and unreasonable seizure of his property.[6] Accepting as true that Arnold obtained an arrest warrant for Plaintiff without probable cause, the false arrest claim is plausible. *See Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020) (quoting *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)) ("A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff."). And at least regarding the alleged seizure of Plaintiff's vehicle occurring prior to the execution of the search warrant at his residence later that day, Plaintiff may also have a potentially colorable unreasonable seizure claim.[7] *See Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 543 (6th Cir. 2002) (quoting *United States v. Place*, 462 U.S. 696, 701) (1983)) ("In the ordinary case, the [Supreme] Court has viewed a seizure of personal property as per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized.").

To impose liability for these claims on entities like Sumner County, the City of Portland, and the Drug Task Force,[8] Plaintiff must allege that they had a policy or custom that directly caused him to suffer the constitutional violation. *Hardrick v. City of Detroit, Mich.*, 876 F.3d 238, 243

---

[6] Plaintiff cannot state a malicious prosecution claim under the Fourth Amendment, because he does not allege that the criminal proceedings arising from his most recent arrest, search, and seizure have been resolved in his favor. *See King v. Harwood*, 852 F.3d 568, 579 (6th Cir. 2017) (citing *Heck v. Humphrey*, 512 U.S. 577 (1994)) ("[A] malicious-prosecution claim is not available before the favorable termination of criminal proceedings.").

[7] Plaintiff does not allege that law enforcement obtained the search warrant for his residence without probable cause, so he does not assert a viable challenge the seizure of his property during the execution of that warrant.

[8] As in Plaintiff's 2019 lawsuit, the Court cannot determine at the initial review stage whether the Drug Task Force "is a state agency, a municipal agency, or a suable entity created by contract with one or more municipalities." *See Burley*, No. 3:19-cv-00118, Doc. No. 4 at 3 n.1 (citing *Lamb v. Tenth Jud. Dist. Drug Task Force*, 944 F. Supp. 2d 586, 594–95 (E.D. Tenn. 2013); *Rhea v. W. Tenn. Violent Crime & Drug Task Force*, No. 2:17-cv-02267-JPM-cgc, 2017 WL 10636418 (W.D. Tenn. Dec. 29, 2017)). Accordingly, for the purpose of initial review only, the Court assumes that the Drug Task Force is a suable municipal entity.

(6th Cir. 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–92 (1978)). "There are four methods of showing . . . a policy or custom: the plaintiff may prove '(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). Liberally construing Plaintiff's allegations, he attributes the asserted First and Fourth Amendment violations to policies of inadequate training and supervision, as well as a custom of tolerance for civil rights violation premised, in part, on the violations alleged in the 2019 lawsuit. Plaintiff's attribution in this regard may be unsupported by much underlying factual matter, but considering Plaintiff's pro se status, and the early stage of the proceedings, the Court must construe the Complaint liberally and give Plaintiff the benefit of the doubt. Accordingly, purely for the purpose of initial review, the Court finds these allegations sufficient to state potentially colorable First and Fourth Amendment claims against Sumner County, the City of Portland, and the Drug Task Force.

Additionally, Plaintiff has stated colorable individual-capacity claims against Arnold under the First and Fourth Amendments based on his personal involvement in the asserted constitutional violations. *See Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (quoting *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989)) ("On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right[.]"). Plaintiff's official-capacity claims against Arnold, however, will be dismissed. "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v.*

*Graham*, 473 U.S. 159, 165 (1985)). As an alleged detective for the Portland Police Department and member of the Drug Task Force, Arnold represents the City of Portland and the Drug Task Force. Because Plaintiff's First and Fourth Amendment claims against the City and the Drug Task Force will not be dismissed, the official-capacity claims against Arnold are redundant and thus subject to dismissal. *See Jackson v. Shelby Cnty. Gov't*, No. 07-6356, 2008 WL 4915434, at *2 (6th Cir. Nov. 10, 2008) (affirming dismissal of redundant official-capacity claims).

As the Complaint makes clear, however, Plaintiff is currently involved in state criminal proceedings related to the arrest and seizure that form the basis of his First and Fourth Amendment claims in this case. In these circumstances, the Court finds it appropriate to stay Plaintiff's federal claims pending the resolution of the state criminal proceedings arising from Plaintiff's April 2021 arrest. *See Wallace v. Kato*, 549 U.S. 384, 393–94 (2007) (citing *Heck*, 512 U.S. at 487–88 n.8) ("If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.").

The Court notes that if Plaintiff's state criminal proceedings are not resolved in his favor, the First and Fourth Amendment claims asserted in this case may face obstacles under the *Heck* doctrine. Under *Heck*, "a Section 1983 suit is not cognizable if it would 'necessarily' invalidate the plaintiff's conviction or sentence, unless the plaintiff can show the conviction or sentence had been set aside." *Sanders v. Detroit Police Dep't,* 490 F. App'x 771, 773 (6th Cir. 2012) (quoting *Heck*, 512 U.S. at 487). Thus, if Plaintiff is convicted in state court, and a favorable ruling in this case would necessarily invalidate his conviction(s), "*Heck* will require dismissal." *Wallace*, 549

10

Case 3:21-cv-00326   Document 5   Filed 07/22/21   Page 10 of 12 PageID #: 37

U.S. at 394 (citing *Edwards v. Balisok*, 520 U.S. 641, 649 (1997)). Otherwise, this action may proceed, "absent some other bar to suit." *Id.*

Finally, for two reasons, the Court also finds it appropriate to stay Plaintiff's state-law claims. First, to the extent that the state-law claims rely on the same factual allegations as the federal claims, it is just as important to avoid a ruling by this Court that may potentially conflict with a ruling in Plaintiff's ongoing state criminal proceedings. *See Bernier v. Walker*, 1:18-cv-01131-LJO-SKO, 2019 WL 1209626, at *6 (E.D. Cal. Mar. 14, 2019) (staying federal claims premised on allegations of retaliatory prosecution pending the resolution of ongoing and related state criminal proceedings and concluding that there was "no reason that its findings regarding the stay would not apply with equal force to any parallel aspect of the state law claims"). Second, if *Heck* ultimately requires the dismissal of Plaintiff's First and Fourth Amendment claims, it would be appropriate for the Court to decline to exercise supplemental jurisdiction over the state-law claims and dismiss them without prejudice. *See* 28 U.S.C. § 1367(c)(3). Accordingly, it would be premature to address the substance of Plaintiff's state-law claims at this juncture.

### III. Conclusion

For these reasons, Plaintiff's application to proceed as a pauper will be granted, and the Court concludes that he has stated potentially colorable First and Fourth Amendment claims against Sumner County, the City of Portland, the 18th Judicial District Drug Task Force, and Jason Arnold in his individual capacity. These claims, along with Plaintiff's state-law claims, will be stayed pending the resolution of the ongoing state criminal proceedings arising from Plaintiff's April 2021 arrest. However, Plaintiff's Fifth and Fourteenth Amendment claims, as well as his official-capacity claims against Arnold, will be dismissed.

An appropriate Order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE